UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STEPHEN J. JECKER,                                                                                              Plaintiff,

v.                                                                        Civil Action No. 3:12-cv-219-DJH-CHL

MONUMENTAL LIFE INSURANCE
COMPANY,                                                                                                    Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Jecker and Defendant Monumental Life Insurance Company have both moved for summary judgment on Jecker's claims of age discrimination and retaliation under the federal Age Discrimination in Employment Act and the Kentucky Civil Rights Act.  (Docket Nos. 87, 90)  The Court heard oral argument on the motions on April 12, 2016. (D.N. 107)  For the reasons discussed below, the Court finds that Monumental is entitled to summary judgment on Jecker's claims of retaliation.  However, because genuine disputes of material fact remain with respect to the age-discrimination claims, those claims cannot be resolved through summary judgment.

**I.      BACKGROUND**

Jecker worked for Monumental or its predecessor for approximately thirty-two years. During that time, Jecker held various positions within the company; at the time of his termination in December 2009, his title was Senior Field Vice President (SFVP).  Jecker's responsibilities as SFVP included overseeing the Monumental Sales Associate (MSA) program, which was developed in 2008 to reduce costs by recruiting insurance agents who would work as independent contractors instead of employees.  Jecker was chosen to lead the MSA program—a promotion from his previous position—because Monumental's chairman, president, and CEO,

Henry Hagan, believed Jecker "had the energy, the communication skills, enthusiasm, tenacity, natural promoter capabilities" and other strengths essential for the position. (D.N. 87-4, PageID # 516)

Just prior to becoming SFVP, Jecker had been a Senior Regional Vice President, a title also held by Charles Green (who was 61 years old in 2008) and P.J. West (age 67). All three reported to Hagan. Green and West continued as Senior Regional Vice Presidents when Jecker took the SFVP job, each taking responsibility for one-half of Monumental's field offices instead of one-third as before. As a result, Green and West, as well as Jecker, were promised promotional pay increases of ten percent.

The raises were never implemented, however. Jecker complained to several Monumental officials about this failure, including Hagan; Hagan's superior, Tim Stonehocker; and CFO Ralph Arnold, as well as Scott Ham, the Business Unit General Counsel for Monumental's parent company, Aegon. When he spoke to Ham, Jecker noted that at his age (then 57 ½), he had few avenues for relief within the company—in other words, he was in such a senior position that there were few superiors to whom he could take his complaint. (*See* D.N. 87-3, PageID # 458-59)

Hagan testified that in the summer or fall of 2009, Jecker displayed a "loss of conviction regarding the success of the MSA program." (D.N. 87-4, PageID # 522) In an e-mail to Hagan on September 8, 2009, Jecker requested that he be allowed to resume his previous duties as a Senior Regional Vice President in addition to managing the MSA program. (D.N. 88, PageID # 559) A September 11, 2009 e-mail from Jecker to Hagan hints at Jecker's disenchantment:

> I still believe in this MSA Program and I'm convince[d] if the process is followed properly, it will be a great success for us at Monumental and can possibl[y] be duplicated in other Home Service Companies—for future acquisition opportunities—again, I know it can work! For the first time, since the Providian

2

> acquisition, I don't see myself at that Finish Line . . . but rather at the Finished Line! . . . . I will continue to do my best with the MSA Program throughout this next year . . . but if (or when) the time comes, let's agree to be respectful and treat each other with dignity . . . and remember some great times! . . . It's been a great run!!

(D.N. 87-3, PageID # 500 (ellipses in original))  According to Hagan, Jecker commented in October 2009, "[G]et me to [age] 58 and I am out of here," though Jecker denies saying this. (D.N. 87-4, PageID # 532; *see* D.N. 87-1, PageID # 422 n.3))

In November 2009, Jecker was summoned to Hagan's office in Baltimore for a meeting. Jecker believed that he was being promoted. Specifically, Jecker thought that Green and West's positions would be eliminated and that he would be named the remaining Senior Regional Vice President, with increased responsibilities. (D.N. 87-3, PageID # 461)  In fact, Hagan informed Jecker that he "was going to get [his] wish": Hagan "was going to be able to grant [Jecker] his retirement as [Jecker] requested." (*Id.*)  Jecker resisted but was told the decision was final. (*Id.*) His employment was terminated on December 31, 2009.

## II. ANALYSIS

Jecker asserts that his firing constitutes age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010.[1]  (*See* D.N. 1-1)  Each party seeks summary judgment on all claims. (D.N. 87, 90)  As the same standards apply to KCRA and ADEA claims, *see Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393-94 (6th Cir. 2008), Jecker's state and federal claims may be analyzed concurrently.

---

[1] Jecker's complaint also alleged intentional infliction of emotional distress; however, the parties have since stipulated to dismissal of that claim. (*See* D.N. 1-1, PageID # 11; D.N. 97)

3

A.  **Summary Judgment Standard**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). In reviewing a summary judgment motion, the Court may not make credibility determinations or weigh the evidence, even if the nonmoving party's evidence is contradictory. *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (explaining that evidence presented by plaintiff refuting motion for summary judgment must be accepted as true even though plaintiff's deposition testimony was "at times inconsistent both with itself and with his prior statements").

B.  **Retaliation**

Jecker contends that he was retaliated against for complaining of age discrimination. (*See* D.N. 90-1, PageID # 594-98) His retaliation claims are subject to a burden-shifting test that first requires Jecker to establish that (1) he "engaged in a protected activity"; (2) Monumental knew that he had engaged in the protected activity; (3) Monumental "took an adverse

employment action against" Jecker; and (4) "there is a causal connection between the protected activity and [the] adverse action." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (alteration in original) (citations omitted). Jecker argues that he engaged in protected activity on two occasions: when he complained to Aegon General Counsel Scott Ham about his failure to receive a promotional bonus, and during a conversation with Hagan shortly thereafter. (*See* D.N. 90-1, PageID # 595)

### 1. Ham

Jecker's deposition testimony concerning his meeting with Ham was inconsistent. He first testified that he complained to Ham about not receiving the bonus for "age-related" reasons:

> [T]he meeting with Scott Ham was—well, actually, the meeting with Scott Ham was just to find out, informally just to ask him, you know, was the—what was the corporate position on paying promotional pay and bonus at this particular time. And Mr.—Mr. Ham asked me why I'm bringing that to him, why I had a problem and why did I think that my promotional pay and bonus wasn't being paid. And I informed him at that time: Because I'm 57 ½ years old and I'm in a position the company can do whatever they want with me, it seems like. And at that time I said, I'm not going to quit and they can't fire me, I thought.
>
> And so he told me, he said, do you think that this is age related? And I said absolutely. He said, well, you know, if I pursue this, this is going to ruffle a lot of feathers. And I stated, do I look afraid to you? I didn't think it would cost me a job, but the next conversation I had was the—Mr. Hagan was—well, Mr. Hagan and our chief financial officer, Mr. Ralph Arnold, was e-mail exchanges about, you know, what I'd said and why I said it and who gave permission to talk about, you know, the thing going above the decision that the company made. And so 30 days later I'm out of a job.

(D.N. 87-3, PageID # 456)

Later, however, Jecker denied that his failure to receive the bonus was due to his age, instead characterizing his complaint to Ham as being that there were few employees above him to entertain his grievance about not having received the promised raise:

> Q. Are you saying that Mr. Hagan declined to pay you this promotional bonus because of your age?

5

A. No, not the bonus because of my age.

Q. Are you claiming that your not getting that bonus had anything to do with your age?

A. Well, actually what I referenced to Mr. Ham was the fact that at my age at 57 ½ where could I take—where could I take the complaint? Mr. Hagan had an understanding of that you were allowed to bitch up and calm down was the phrase, which meant you could take complaints up to him or whoever you want, don't be complaining below to your subordinates.

I tried. I went to—I went to Mr. Arnold. I went to actually Mr. Hagan. I was just asking, you know, why, why isn't this being paid anymore? And the point in the age came up is because I was in an age of that what could I do, you know.

Q. You brought up your age, saying: Because of my age, my options are limited?

A. That's correct.

Q. But when you talk and have talked in many of the documents produced in this litigation about not getting that promotional bonus, your complaints to Mr. Stonehocker about that, to Mr. Ham about that, to Mr. Hagan, Mr. Arnold . . . was not a complaint under this [equal employment opportunity] policy that appears in Exhibit 3, that is, it was not a complaint of discrimination, harassment, questionable accounting practices, internal accounting or auditing or information security violations, correct?

A. That's correct.

Q. It was not?

A. It was not.

Q. It was an issue to you of a promise that you felt had been made to you and that was not being kept and that wasn't right?

A. Yes, ma'am. I thought it was more than a promise, but yes.

6

> Q. So, in your mind, was your complaint about not getting your promotional bonus something that would have been appropriate for a S.H.A.R.E. complaint?[2]
>
> A. I don't know if it's—if that's a—the S.H.A.R.E. line, to me, is more of a—it seemed like more serious matters. This had to deal with more—what I was trying to get, quite frankly, was back to the truth, who was telling me the truth. Was it a corporate policy or was it a Monumental policy? It seemed pretty simple to try to get an answer.

(*Id.*, PageID # 458-59) Not surprisingly, Monumental points to the latter excerpt, while Jecker relies on the former.[3] (*See, e.g.*, D.N. 90-1, PageID # 589; D.N. 98, PageID # 1333-34)

Although Jecker's initial testimony is seemingly contradicted by his later statement, the Court may not disregard it on that basis. *See Schreiber*, 596 F.3d at 333. Nevertheless, Jecker fails to satisfy the second element, i.e., that Monumental was aware of his complaint to Ham. *See Blizzard*, 698 F.3d at 288. As to this element, Jecker simply asserts that "Monumental knew of Jecker's complaint, through Ham, a major corporate executive." (D.N. 95, PageID # 886) He then cites *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), for the proposition that "[w]hen a major company executive speaks, 'everybody listens' in the corporate hierarchy." (D.N. 95, PageID # 886 (quoting *Ercegovich*, 154 F.3d at 355)) But the *Ercegovich* court was referring to discriminatory remarks made by an employee in a position to influence decision-makers who fired the plaintiff, not an employer's knowledge of a plaintiff's complaint. *See* 154 F.3d at 355. Jecker does not offer any evidence that Ham relayed his complaint to Hagan—the sole decision-maker in Jecker's firing (*see* 90-1, PageID # 596)—or to anyone else

---

[2] S.H.A.R.E. was a Monumental program for reporting and addressing harassment or discrimination. (D.N. 87-3, PageID # 457)
[3] Jecker also maintains that he understood defense counsel's question to be whether his complaint to Ham constituted a formal complaint under Monumental's equal employment opportunity guidelines. (*See* D.N. 95, PageID # 884)

7

in a position of authority at Monumental.[4]  *See Howard v. William Beaumont Hosp.*, No. 12-11949, 2013 U.S. Dist. LEXIS 178044, at *16 (E.D. Mich. Dec. 19, 2013) ("To satisfy the knowledge element for the prima facie case, a plaintiff must show that the defendant employer's 'relevant management decision-makers' knew of the plaintiff's 'exercise of protected activity.'") (quoting *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999))).  Moreover, Ham was not even a Monumental employee.  (*See* D.N. 98-12, PageID # 1521)  In an affidavit attached to Monumental's summary judgment response, Ham states that if he had received an age-discrimination complaint from Jecker, he "would have made a record of the conversation and immediately contacted appropriate Monumental personnel"; however, no such record exists.[5] (D.N. 98-12, PageID # 1521; *see id.*, PageID # 1522)  Jecker's retaliation claims thus cannot survive summary judgment to the extent they rest on his complaint to Ham.  *See Celotex*, 477 U.S. at 322-23; *Blizzard*, 698 F.3d at 288.

    2.    **Hagan**

Jecker has not shown that he engaged in protected activity by complaining to Hagan of age discrimination.  Indeed, the testimony cited by Jecker on this point actually contradicts his claim:

> Q.    When did you next complain about age discrimination to anyone?
>
> A.    The only reference was following the [Life & Protection] meeting.
>
> Q.    This is the meeting in Dallas?
>
> A.    In the Dallas meeting where Henry [Hagan] and I talked about the back to the original plans.  My understanding was is [sic] that we were going to

---

[4] Jecker speculated during his deposition that Arnold may have influenced Hagan's decision to fire him, but he likewise presents no evidence that Ham told Arnold he had complained of age discrimination.  (D.N. 87-3, PageID # 460; *see* D.N. 90-1, PageID # 596)

[5] Ham denies that Jecker complained to him of age discrimination or that he told Jecker his complaint would "ruffle some feathers."  (D.N. 98-12, PageID # 1521)

8

[be] making these changes. I had a conversation with Mr. White, also, about the changes and just stay patient and it was being worked out.

Q. Now, let me back up—

A. I had a conver—

Q. Go ahead.

A. I had a conversation with—it's on there, but Mr. Arnold.

Q. So the Dallas L&P meeting was October of '9; is that right?

A. October '9, that's correct.

Q. And are you saying you complained to Mr. Hagan or somebody else about age discrimination in October of '9?

A. In October of '9 is where the—Mr. Hagan and I had the discussion about what the next steps would be moving forward with the opportunity that was—where we were going next.

Q. But my overarching question was when—at what time or times did you complain about age discrimination? So you've mentioned one occasion, September of '9, and you said you complained to Mr. Ham?

A. Yes.

Q. And then at the Dallas L&P meeting, what I'm trying to understand now is what part of that meeting consisted of an age discrimination complaint by you?

A. I didn't have a complaint.

Q. Okay.

A. I didn't—when you say complaint, I wasn't there complaining. We were having discussions on this.

Q. Right. And the discussion was essentially that you thought you were going to be heading up the organization and that Green and West would be gone?

A. That's correct.

Q. But you didn't complain about age at that time, correct?

9

   A. No, ma'am.

(D.N. 95-5, PageID # 951-52)  Even viewed in the light most favorable to Jecker, this testimony does not show that he "took an overt stand against suspected illegal discriminatory action." *Blizzard*, 698 F.3d at 288 (internal quotation marks and citation omitted).  Because Jecker has failed to establish that he engaged in protected activity by complaining to Hagan of age discrimination, Monumental is entitled to summary judgment on his retaliation claims.  *See Celotex*, 477 U.S. at 322-23; *Blizzard*, 698 F.3d at 288.

  C. **Age Discrimination**

  Jecker's age-discrimination claims are slightly stronger, but not strong enough to warrant summary judgment in his favor.  Jecker first contends that he has direct evidence of age discrimination.  (D.N. 90-1, PageID # 598)  With either direct or circumstantial evidence, a plaintiff who alleges age discrimination bears the burden of demonstrating "that 'age was the but-for cause of the employer's adverse action.'" *Blizzard*, 698 F.3d at 283 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).  Jecker attempts to make this showing with a series of comments by various individuals who worked at Monumental.

  Former Monumental Regional Vice President Matt Balsbaugh testified regarding a number of the comments cited by Jecker.  Balsbaugh claims that in December 2008, he overheard Stonehocker tell Hagan, "[I]t's time you got rid of those old son of a bitches," referring to Jecker, Green, and West, and that Hagan replied, "[G]ive me some time, we're working on it right now."[6]  (D.N. 90-12, PageID # 757-58)  Balsbaugh also testified that after Jecker's termination, Hagan "made a comment about [Jecker]'s age"—specifically, that "it was

---

[6] Later in his deposition, Balsbaugh testified that he was surprised when Jecker was fired and that he had never heard anyone at Monumental talk, formally or informally, about terminating Jecker.  (D.N. 98-4, PageID # 1437)

time for [Jecker] to go and that um, we need to have, you know, younger people in the organization run it." (*Id.*, PageID # 756) According to Balsbaugh, Hagan frequently referred to older employees as "dinosaurs." (*Id.*, PageID # 753, 755)

Other remarks cited by Jecker also suggest an atmosphere of ageism at Monumental—for example, statements by Hagan and Arnold that certain employees were too old and needed to retire, or that the company needed "new blood." (*See* D.N. 95, PageID # 873-74 (listing allegedly discriminatory statements)) Contrary to Jecker's assertion, however, the only statement that could serve as direct evidence of age discrimination in this case is Hagan's supposed comment to Balsbaugh that "it was time for [Jecker] to go" and that the company should be run by "younger people." (D.N. 90-12, PageID # 756) Direct evidence, in the context of an age-discrimination claim, is evidence that, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 530 (6th Cir. 2014). "In other words: 'Direct evidence is evidence that proves the existence of a fact without requiring any inferences.'" *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). Hagan's alleged "time for [Jecker] to go" comment, while vague, is the only statement by the decision-maker (Hagan) about Jecker and thus tends to prove discriminatory intent without any inferences. *See id.* However, Hagan denies making this comment.[7] (D.N. 98-11, PageID # 1519 (Hagan affidavit)) There is thus a dispute of material fact as to Jecker's direct-evidence theory of age discrimination.

---

[7] Jecker protests that Hagan's affidavit, submitted with Monumental's response to Jecker's summary judgment motion, is "self-serving" and "contradicts his sworn deposition testimony." (D.N. 100, PageID # 1689) However, the deposition testimony Jecker cites in support of this assertion does not relate to Hagan's alleged comments about age. (*See* D.N. 100-10, PageID # 1810-11 (discussing Monumental's cost-cutting objectives); D.N. 100-12, PageID # 1822-23 (correcting statements from earlier deposition regarding severance plans and amount of cost-cutting required)) Moreover, as Hagan is not a party to this lawsuit, nor is he even still employed

11

Although Monumental asserts otherwise, the remaining comments are relevant to the burden-shifting analysis that applies to discrimination claims supported by circumstantial evidence. (*See* D.N. 99, PageID # 1528 (citing non-Sixth Circuit cases for proposition that evidence of discrimination "in the air" is inadequate)) At the first stage of the burden-shifting inquiry, Jecker must establish a prima facie case of age discrimination by showing (1) "that he was a member of a protected class"; (2) "that he was discharged"; (3) that he was qualified for the job in question; and (4) "that he was replaced by someone outside of the protected class." *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). Only the fourth element is disputed here. (*See* D.N. 87-1, PageID # 431-33) If Jecker was terminated as part of a work force reduction, his burden on this element is greater: he must "provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him] out . . . for discharge for impermissible reasons.'" *Id.* (quoting *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

Monumental argues that Jecker's termination occurred in the context of a work force reduction, while Jecker maintains that he was replaced by Bo Gibbs, a then-thirty-six-year-old hired shortly before Jecker was terminated. "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Id.* at 623 (quoting *Barnes*, 896 F.2d at 1465). Further, "[a] person is considered replaced 'only when another employee is hired or reassigned to perform the plaintiff's duties'"; "a person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing

---

by Monumental, the Court is less concerned that he would attempt to fabricate a factual dispute through his affidavit.

related work.'" *Id.* (quoting *Barnes*, 896 F.2d at 1465). Jecker has presented proof that Gibbs replaced him, while Monumental offers evidence that Green—who was older than Jecker—assumed Jecker's duties along with Gibbs and Balsbaugh. (*See* D.N. 87-1, PageID 431-32; D.N. 95, PageID # 877-79) This factual dispute precludes summary judgment on Jecker's circumstantial-evidence theory.

Even assuming Jecker could establish a prima facie case, a material factual dispute would remain later in the burden-shifting analysis. Monumental has offered a legitimate, nondiscriminatory reason for Jecker's termination, namely that it was under orders from Aegon to dramatically reduce costs. Among other evidence, Monumental cites Hagan's testimony that Aegon's Life and Protection division (of which Monumental was a part) was required to cut costs by a total of $150 million, including $70 million in the first year. (*See* D.N. 87-4, PageID # 511) Jecker points out that in his later deposition as a corporate representative, Hagan clarified that the $150 million number did not apply to the L&P division and further stated that most of the required reduction had been achieved by the time Jecker was fired. (D.N. 95, PageID # 880-81 (citing Hagan depo.)) Still, Jecker does not refute that significant cost-cutting measures were in place at Monumental around the time of his termination or that numerous other employees were also terminated because their jobs were eliminated, including West, Balsbaugh, and Hagan himself. (*See* D.N. 87-1, PageID # 426 & n.6) Thus, the burden shifts to Jecker to show that Monumental's stated reason was merely a pretext for discrimination. *See Blizzard*, 698 F.3d at 283 (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)).

Jecker argues that the remarks related by Balsbaugh—specifically, the purported statement by Stonehocker about getting rid of "old son of a bitches" and Hagan's "admission" that Jecker was fired because of his age—demonstrate pretext. (D.N. 95, PageID # 880)

Discriminatory comments can serve as evidence of pretext. *See Ercegovich*, 154 F.3d at 354-57. To ascertain the relevance of such comments, the Court must first consider "the identity of the speaker." *Id.* at 354. While "[a]n isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination," *id.* (citation omitted), comments by an individual who "was in a position to influence" the challenged employment decision are relevant to the pretext inquiry. *Id.* at 355. Here, Hagan testified that the decision to fire Jecker was his alone. (D.N. 90-7, PageID # 719) However, it is reasonable to assume that the "directive" from his superior, Stonehocker, might have influenced that decision.[8] (D.N. 95, PageID # 880)

The Court "must also examine the substance of the discriminatory remarks" to determine their relevance. *Ercegovich*, 154 F.3d at 355. A plaintiff need not show a direct nexus between the remarks and his termination. *See id.* (citing *La Pointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993)). Where multiple discriminatory remarks are alleged, the Court must consider them in the aggregate, remaining "mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus." *Id.* at 356. Finally, while the Court should consider the timing of discriminatory remarks, a comment that does not "coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment" may still be relevant, particularly "when the discriminatory statement is not an off-hand comment by a low-level supervisor but a remark by a senior official evidencing managerial policy." *Id.* (internal quotation marks and

---

[8] Jecker's speculation that Arnold may have played a role in his firing is insignificant for summary judgment purposes. *See Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." (quoting *Godfrey v. Pulitzer Publ'g Co.*, 276 F.3d 405, 412 (8th Cir. 2002))).

citations omitted). The Court "must carefully evaluate factors affecting [a] statement's probative value, such as the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext." *Id.* at 357 (internal quotation marks and citations omitted).

Here, there is ample evidence that discriminatory comments were made by Hagan, Monumental's chairman, president, and CEO. (*See* D.N. 95, PageID # 874-75) However, Hagan denies making the comments; several of the comments are far removed in time from Jecker's termination; and there is no other evidence of pretext. Hagan likewise denies that the "old son of a bitches" exchange ever occurred. (D.N. 98-11, PageID # 1518-19) Given the conflicting evidence as to whether the discriminatory comments were made, a jury will have to decide whom to believe and what weight to give the alleged comments. *Ercegovich*, 154 F.3d at 354 ("Ultimately, whether a jury chooses to believe the plaintiff[] or the defendant[]'s version of events depends on the credibility of each party's witnesses, and credibility determinations are for the jury to decide." (citing *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995))). Thus, Jecker's age-discrimination claims cannot be resolved on summary judgment.

### III. CONCLUSION

Jecker has failed to establish a genuine dispute of material fact with respect to his retaliation claims, and summary judgment is therefore warranted on those claims. However, there are several material factual disputes regarding Jecker's claims of age discrimination, making summary judgment on those claims inappropriate. Accordingly, it is hereby

15

**ORDERED** as follows:

(1) The motion for summary judgment of Defendant Monumental Life Insurance Company (D.N. 87) is **GRANTED** with respect to Plaintiff Stephen J. Jecker's claims of retaliation under the Kentucky Civil Rights Act and the Age Discrimination in Employment Act. The motion is **DENIED** as to Jecker's age-discrimination claims.

(2) Jecker's motion for summary judgment (D.N. 90) is **DENIED**.

(3) This matter will be set for a telephonic status conference by subsequent order.

May 23, 2016

**David J. Hale, Judge**
**United States District Court**